IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-71,431-01






EX PARTE ROGER DEAN UPCHURCH, JR., Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM JOHNSON COUNTY






 Johnson, J., dissenting to denial of relief.



D I S S E N T I N G S T A T E M E N T



 The trial court held a hearing on the issue of applicant's indigence on February 23, 2007. The
trial court ruled that applicant was not indigent and refused to appoint an attorney to represent him
on the state's motion to revoke applicant's deferred adjudication. Applicant's community
supervision was adjudicated while he was without counsel, and he was sentenced to the maximum
allowable term of imprisonment.

 Applicant's sole ground in his habeas corpus petition said, "After repeatedly asking for
attorney, I was denied saying I was not indigent enough. But probation officer made me quit my job
after 10 yrs. Also made me move in which I did not have no place to except I lived in my parents
shed (7 x 7 in size) with no heat."

 The trial judge found, and the record reflects, that on January 16, 2007, applicant told the trial
court that he would retain an attorney "'with the filing of my income tax' indicating that he had
funds to retain counsel." The case was reset for February 16 and again for February 23, when
applicant "advised the court that he was not able to retain an attorney." On February 23, the judge
conducted an indigence hearing. RR February 23, 2007 pp. 3-5.

THE COURT: . . . Are you working right now?

THE DEFENDANT: Yes, sir.

THE COURT: Where are you working?

THE DEFENDANT: Cleburne Glass.

THE COURT: How much do you make there?

THE DEFENDANT: I bring home about 230 every week.

THE COURT: You get paid hourly or salary?

THE DEFENDANT: Hourly.

THE COURT: What is it per hour?

THE DEFENDANT: I make 8.40 an hour.

THE COURT: How much did you pay your bondsman to get out of jail?

THE DEFENDANT: My boss and secretary paid my bondsman to get me out of jail.

THE COURT: How much did your boss and secretary pay?

THE DEFENDANT: 1750. I'm paying him back a hundred dollars a week.

THE COURT: Are you going to try to represent yourself in this matter?

THE DEFENDANT: No, sir. I was told to request a court appointed.

THE COURT: Who told you that?

THE DEFENDANT: My PO.

THE COURT: Your PO. Meaning your probation officer?

THE DEFENDANT: Yes, sir. 

 . . . 

 THE COURT: I'm not going to appoint you anybody. If you're out there working, you can
make a bond to get out of jail, you can afford your own attorney. If you can't, you
can represent yourself but I don't find you're indigent at this point.

 . . .

 THE COURT: . . . And that is your trial date. That's when [March 16, 2007] you're going
to trial on this case. If you get an attorney hired, have that attorney notify my office
and the DA's office as soon as that attorney is hired; otherwise, you're going to be
representing yourself.


 During this exchange, applicant affirmatively stated that he did not wish to represent himself
and affirmatively sought the appointment of counsel on the advice of his probation officer, who is
surely familiar with what constitutes indigence and the resultant eligibility for a court-appointed
attorney.

 In a normal work year of 40 hours a week for 52 weeks, applicant will work 2080 hours,
earning a gross annual income of $17,472, $1456 per month, or $336 per week. His net pay is about
$230 per week, and he is paying his boss back for posting bond, decreasing his take-home pay to
$130 per week. At the time of his hearing, applicant's net pay was $6760 per year, or $563 per
month.

 Perhaps when the trial judge said, "If you're out there working, you can make a bond to get
out of jail, you can afford your own attorney," he was unfamiliar with the term "working poor." The
federal poverty threshold in 2007 was a gross income for one person of $10,210 per year, or $851
per month. There is no geographic variation in the guide line; the same figures are used for all 50
states and D.C., urban, suburban, or rural. Thus there is no recognition of higher costs of living in
some areas, lower costs in others. "Although the thresholds in some sense reflect families [sic]
needs, they are intended for use as a statistical yardstick, not as a complete description of what
people and families need to live." http://www.census.gov/hhes/www/poverty/povdef.html

 Federal guidelines for eligibility for food stamps are a gross monthly income of 130% and
a net monthly income of 100% of poverty level. http://www.fns.usda.gov/fsp/government/ FY07_
Income_Standards.htm In 2007, those guidelines set out a maximum gross income of $1062 and
maximum net income of $817 for a single person household. Applicant's net monthly income at
the time of the hearing was $920, but his functional net income was $130 per week, or $563 per
month. A person with that net income is well within the net-income eligibility guidelines for Food
Stamps and, in the real world, many people who are technically above the poverty line are still
unable to pay for anything more than the necessities of life-food, shelter, clothing-and sometimes
not even the necessities.

 Hiring a lawyer is an expensive proposition. His employer posted bond, so applicant cannot
be held not to be indigent on that basis. Applicant tried for three months to hire a lawyer, without
success. Even with the help of his parents, he was unable to gather $750 to retain an attorney. The
attorney with whom he had been discussing representation both testified in court and filed an
affidavit attesting that, in his opinion, applicant was indigent and unable to retain an attorney.

 Among the grounds set out in the state's motion to adjudicate were allegations that he was
behind on his probation fees and had not completed the required therapeutic programs ordered in his
conditions of community supervision. This could be further evidence that he was indigent. Getting
behind on fees is often an indication of lack of financial resources. While the record does not
address such a circumstance, some therapeutic programs refuse attendance if the applicable fee is
not paid, thereby preventing an indigent client from completing required counseling and provoking
revocation.

 While there was sufficient evidence to revoke applicant's supervision because of his failure
to report to his community-supervision officer on several occasions and an arrest for driving while
his license was suspended, at the time of the hearing on the state's motion to adjudicate applicant
was indeed indigent. As the state conceded in its response, "The right of counsel extends to a
probationer during a revocation hearing unless the probationer affirmatively waives said right."
Applicant did not affirmatively waive assistance of counsel, and indeed, specifically requested such
assistance. Applicant was indigent and entitled to a court-appointed attorney. The trial judge
refused to provide the required appointed counsel, leaving applicant without counsel at a critical
stage of criminal proceedings.

 It is ludicrous in this situation to argue that habeas corpus relief is not available because
applicant could have appealed the trial judge's finding that applicant was not indigent to the court
of appeals, but did not do so. How does an indigent defendant who is denied court-appointed
counsel to assist him at a revocation hearing even know that he has a right to appeal the trial judge's
finding that he is not indigent? And how, being indigent, does he acquire the services of an appellate
counsel to pursue such an appeal?

 I respectfully dissent to the denial of habeas corpus relief.


Filed: September 30, 2009

Do Not Publish